[L. A. No. 10189. In Bank.—March 9, 1929.]

RUSSELL E. HERMANCE et al., Appellants, v. JOHN
N. BLACKBURN et al., Respondents.

Goodspeed, Pendell & Neff and G. Roy Pendell for Appellants.

Cantillon & Sievers for Respondents.

CURTIS, J.—This action concerns a dispute as to the boundary line between lots 28 and 30 in block 72 of the city of Burbank, in the county of Los Angeles. The plaintiffs are the owners of said lot 30 and the defendants of said lot 28. The lots face easterly on Tajunga Avenue and are situated between Tenth and Eleventh Streets of

said city. Tajunga Avenue runs in a northerly and southerly direction, and plaintiffs' lot is located to the south of and adjoining defendants' said lot. The claim of plaintiffs, as made by the pleadings, is that the defendants have encroached upon plaintiffs' lot to the extent of 1.87 feet. The evidence, plaintiffs contend, shows an encroachment of 1.85 feet. Defendants in their pleadings denied that they had encroached upon plaintiffs' lot to any extent whatever. The court found in favor of the defendants and entered judgment accordingly, from which the plaintiffs have appealed upon a bill of exceptions.

The specific charge of the plaintiffs is that the defendants constructed a dwelling-house on said lot 28, and as a part of said house the defendants erected an ornamental arch and its supports; the northerly end of said arch joins and unites with said dwelling-house, and the arch thence extends from said dwelling-house southerly over to and beyond the boundary line of said lot 30 and is supported at its southerly end by a pillar which forms a part of said arch, and that said arch and the southerly pillar supporting the same extends over and on plaintiffs' said lot 28 to the extent of 1.87 feet. For the purpose of proving these allegations the plaintiffs called three witnesses, all of them surveyors or engineers. Their evidence tended to show that the original survey of the city of Burbank was made in 1887. In 1911 the witness Edward M. Lynch, who was then city engineer of said city, made what he called a center line survey "for the purpose of locating the center lines of the various streets of said city, preparatory to the city entering upon a plan of street improvement." At that time a number of the streets were not open, but were covered with brush. Upon locating the intersections of the center lines of two streets this witness testified that he drove 2x2 stakes at the intersecting points of the center lines, which he buried all the way from one to two feet underground, depending upon the character of the ground, so as to preserve those particular points for future use. Two years later cement curbs were put in, running from First Street to Tenth Street, and while the cement was still fresh he drove nails into it, one at each of the four corners at street intersections, and these nails served as "monuments" or "wit-

ness points" and are also referred to as "reference points." This witness gave no testimony as to the boundary line between said lots 28 and 30, but plaintiff's other two witnesses, one T. R. Mini, city engineer of said city, the other David Gustavson, a civil engineer in the employ of said city, each testified that, using a copy of the field-notes of Mr. Lynch made by him at the time of his survey, they jointly located the boundary line between said two lots, and that the southerly end of the ornamental arch constructed by defendants was over on the land of the plaintiffs a distance of 1.85 feet. Three witnesses testified for the defendants. They also were engineers. A joint survey of the premises of the parties hereto was made by two of these witnesses, John N. Nelson and William F. Alston. They each testified that the archway constructed by the defendants protruded on to the lot of the plaintiffs. Nelson was asked if they in their said survey made "any determination with reference to that archway at Mr. Blackburn's house. A. Well, when I had the instrument on the hub that I set on the southeasterly corner of lot 28 I couldn't see the stake that I had on the southwesterly corner, because the archway was over somewhat. Q. You didn't determine how much that archway was over in your survey? A. No. Q. It was over, though, was it, on the lot line? A. yes. Q. But how much you don't know? A. No."

Upon this point Alston testified: "I was sent around to the southwest corner of the lot where we had set the hub as we came up Tajunga; but the line of sight was interrupted by the projecting of the arch on the south side of the house on lot 28. Q. That is an arch projecting from lot 28 over to lot 30? A. Yes, sir. Q. Did you look through the transit? A. No, sir, I didn't. Q. And Mr. Nelson simply told you, then, that he couldn't get the two points—he couldn't see from point to point, as established by you as being on the southerly line of lot 28, on account of the archway that was there, which was connected with the house on lot 28, which was Mr. Blackburn's? A. Yes, sir."

It is evident that there is nothing in the testimony of either of these witnesses to controvert or negative the direct testimony offered on behalf of the plaintiffs that said archway was over on plaintiffs' lot 1.85 feet. The only

other witness in the case was Fred G. Beckner, called by the defendants. He testified that he also made a survey to determine the boundary line between lots 28 and 30 and when asked in reference to the "arch on that house, how far did that protrude over the lot line as you established it, over the boundary line between lot 28 and lot 30 as you established it for Mr. Hermance?" answered, "Why, I would say approximately a little under three inches." Ordinarily the evidence of this last-named witness might be accepted as sufficient to show that the protrusion of said arch upon plaintiffs' lot was exceedingly slight, and under the facts and circumstances shown in this case the doctrine of *de minimus non curat lex* might well have been applied by the trial court. But this witness, however, further testified that the survey concerning which he was testifying was not made by him personally, but by men in his employ and that he was present only ten or fifteen minutes at the commencement thereof and for the purpose of giving his men reference points from whence to begin or start the survey. It was shown that the survey consumed between six and seven hours. The evidence of this witness was received over the objection of the plaintiffs that it was incompetent on the ground that it was hearsay. There was no showing that this witness was present at the time the boundary line between said lots was run or that he had any knowledge of the location of said arch except that gained by him from the field-notes prepared by his men upon the completion of said survey. It might also be said that the men who actually made the Beckner survey were not called as witnesses. Under this state of facts we are of the opinion that it was error to admit the evidence of Beckner as to the location of said arch, and that without his testimony there was no substantial conflict in the evidence that the arch protruded over and upon plaintiffs' lot, to the extent testified to by plaintiffs' witnesses, that is, 1.85 feet. Both Nelson and Alston, who made the survey for the defendants, expressly stated that the arch was on the plaintiffs' lot. Their testimony corroborated that of plaintiffs rather than controverted it. We would expect as they made the survey for the defendants for the express purpose of locating the arch in reference to the boundary line between the the two lots, that in case they

found the arch was only a trifle over the line they would have so reported and testified. The reasonable inference from their testimony is that they not only found the arch to be constructed upon the plaintiffs' land, but that it protruded thereon substantially to the extent claimed by the plaintiffs. As we view the evidence there is no conflict therein as to the location of the arch upon the plaintiffs' lot. The court having made contrary findings they must be set aside as without any evidence to support them.

The judgment is reversed.

Richards, J., Shenk, J., Seawell, J., Preston, J., Langdon, J., and Waste, C. J., concurred.